Clay Ray COLE and Debbie
L. Cole, Plaintiffs,

v.

Charles E. SHARP and Gene
Barrett, Defendants.

No. 93–4094–RDR.

United States District Court,
D. Kansas.

Aug. 11, 1995.

Christopher Y. Meek, Lynch & Meek, Baxter Springs, KS, Ronald P. Pope, Eugene B. Ralston & Assoc., P.A., Topeka, KS, for plaintiffs.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, David P. Madden, Kurt A. Level, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for defendants.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This case arises from the seizure of the plaintiffs' property by the defendants. Plaintiffs assert federal due process claims under 42 U.S.C. §§ 1983 and 1985 and state law claims of negligence and fraud. The defendants are Charles E. Sharp, the former Sheriff of Cherokee County, Kansas; and Gene Barrett, the former County Attorney of Cherokee County, Kansas. This matter is presently before the court upon the defendants' motion for summary judgment.

Plaintiffs allege that following their arrest on April 19, 1991 on drug charges, their real and personal property was seized by the defendants without notice and a hearing. They further allege that the defendants maintained possession of this property until July 1, 1991 when a court ordered that the property be returned to plaintiffs. Plaintiffs contend that the actions of the defendants violated their due process rights under 42 U.S.C. § 1985 and 42 U.S.C. § 1983. They further contend that the defendants acted negligently in maintaining their property and committed fraud in inducing a plea agreement.

In the instant motion, the defendants argue that they are entitled to summary judgment on all of the claims raised by the plaintiff. They initially contend that the plaintiffs have failed to prove a claim under 42 U.S.C. § 1985. They also assert that they are entitled to immunity on plaintiffs' claims arising under 42 U.S.C. § 1983. Finally, they argue that the undisputed facts in the record demonstrate that they are entitled to judgment on plaintiffs' claims of negligence and fraud.

The facts relevant to the court's decision on the instant motion are undisputed. The court notes initially that the plaintiffs have failed to properly respond to the facts set forth in the defendants' motion. Plaintiffs did not specifically controvert the facts set forth by the defendants as required by D.Kan.Rule 206. Accordingly, the court finds that the facts set forth in the defendants' motion are deemed admitted pursuant to Rule 206(c). The court, however, notes that even if the plaintiffs had properly responded to the facts set forth by the defendants, the record demonstrates the following facts are uncontroverted.

On April 19, 1991, plaintiffs were arrested at their home in Cherokee County based upon drug charges. The arrests of plaintiffs were based upon information from an informant. Sheriff Sharp informed the County Attorney Barrett that sales of drugs had taken place at the Coles' residence. On the

day of the plaintiffs' arrest, Barrett filed a petition for pretrial seizure of plaintiffs' property pursuant to K.S.A. 65–4135 and 65–4171. In an *ex parte* proceeding, the court ordered the property to be held by the sheriff pending trial of the forfeiture action. Following the issuance of the court order, the Sheriff's Department secured the plaintiffs' personal property and real estate. Plaintiffs returned to their real estate and took possession of their personal property on July 1, 1991, after the court ordered all the property returned pending trial in the criminal and civil forfeiture actions. Plaintiff Clay Cole ultimately entered into plea agreement on the drug charges against him. The charges against plaintiff Debbie Cole were dismissed as a result of the plea agreement. This case was filed on April 16, 1993.

Plaintiffs raise four claims in this case. First, they contend that the defendants conspired to deprive them of their civil and constitutional rights in violation of 42 U.S.C. § 1985. Second, they assert that the defendants deprived them of their property without due process in violation of 42 U.S.C. § 1983. Third, they allege that the defendants were negligent in securing and caring for their seized property. Fourth, they contend that the defendants committed fraud in inducing them to enter the plea agreement.

The defendants seek summary judgment on all of the claims asserted by the plaintiffs. The court shall initially consider whether the defendants are entitled to summary judgment on the claims arising under federal law and then consider, if necessary, the claims arising under state law.

## I.

The court agrees with the defendants that although plaintiffs do not specify which provision of § 1985 serves as the basis for plaintiffs' claim, the court should construe plaintiffs' claim as proceeding pursuant to § 1985(3). This construction is necessary because neither § 1985(1) nor § 1985(2) have any application to the factual allegations contained in plaintiff's complaint. An action under § 1985(1) applies only to conspiracies to interfere with officers of the United States or those about to take office. *See* 42 U.S.C.

§ 1985(1); *Biase v. Kaplan,* 852 F.Supp. 268, 290 (D.N.J.1994). An action under § 1985(2) applies only to conspiracies to intimidate witnesses or otherwise obstruct justice. *See* 42 U.S.C. § 1985(2); *Biase,* 852 F.Supp. at 290. Plaintiffs' allegations do not appear to support an action under either § 1985(1) or § 1985(2), and they do not argue that they have stated a claim under either of these subsections.

"[I]n order to prove a claim under § 1985(3), a plaintiff must show (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). "[T]he conspiracy not only must have as its purpose the deprivation of 'equal protection of the laws,' but also must be motivated by 'some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *United Brotherhood of Carpenters & Joiners of America v. Scott,* 463 U.S. 825, 829–30, 103 S.Ct. 3352, 3356–57, 77 L.Ed.2d 1049 (1983) (quoting *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798). The Tenth Circuit has noted that the "class-based animus" requirement has been narrowly construed. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994). The Supreme Court has even questioned whether § 1985(3) was intended to "reach any class-based animus other than animus against Negroes and those who championed their cause." *Scott,* 463 U.S. at 836, 103 S.Ct. at 3360.

Recently, the Supreme Court considered a § 1985(3) claim in the context of an alleged conspiracy to prevent access to abortion clinics. *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). While declining to define precisely the contours of the definition of "class-based animus" for purposes of § 1985(3), the Court stated:

To begin with, we reject the apparent conclusion of the District Court (which respondents make no effort to defend) that opposition to abortion constitutes discrimi-

nation against the "class" of "women seeking abortion." Whatever may be the precise meaning of a 'class' for purposes of *Griffin's* speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid.... As Justice Blackmun has cogently put it, the class "cannot be defined simply as the group of victims of the tortious action." *Carpenters, supra,* 463 U.S. at 850, 77 L.Ed.2d 1049, 103 S.Ct. 3352 (Blackmun, J., dissenting).

*Id.* at 759.

■ Plaintiffs have suggested that the defendants engaged in a conspiracy against them motivated by their animus against those "citizens accused of drug related offenses." Plaintiffs explain their position by arguing that "civil forfeiture laws and 'zero tolerance' laws have put these citizens in a protected class who have been prosecuted and had unconstitutional efforts made to seize property from them."

The court is thoroughly convinced that anti-drug dealer bias or anti-suspected drug dealer bias does not constitute the kind of class-based invidiously discriminatory animus envisioned and prohibited by § 1985(3). To the extent that § 1985(3) reaches any class-based animus other than race, it is clear that it applies only to animus based on "characteristics—i.e., race, national origin or gender—which are traditionally part and parcel of discrete and insular minorities." *Hicks v. Resolution Trust Corp.,* 970 F.2d 378, 382 (7th Cir.1992). "[T]he kind of class-based animus contemplated by section 1985(3) does not include discrimination against classes defined by economic status or activity." *Hoai v. Vo,* 935 F.2d 308, 314 (D.C.Cir.1991), *cert. denied,* 503 U.S. 967, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). The type of class-based animus suggested by the plaintiff does not fall within the limits of § 1985(3). Accordingly, the defendants are entitled to summary judgment on plaintiffs' claim under § 1985.

## II.

The defendants next argue that they are immune from plaintiffs' § 1983 claim. Defendant Barrett argues that he is entitled to absolute immunity based upon prosecutorial immunity. Both defendants contend that they are entitled to qualified immunity.

## A.

Prosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their official duties. Defendant Barrett contends that either doctrine shields him from liability in this case.

■ The court shall begin with the application of the doctrine of absolute immunity. Defendant Barrett, relying upon *Schrob v. Catterson,* 948 F.2d 1402 (3d Cir.1991), contends that he is entitled to absolute immunity. Plaintiffs seek to distinguish *Schrob.* They argue that *Schrob* is inapplicable here because it involved a federal prosecutor. They further contend that the doctrine of absolute immunity cannot be applied to a prosecutor handling a civil case. Plaintiffs assert that the doctrine is limited solely to actions taken by prosecutors in criminal cases.

In *Schrob,* the plaintiffs filed a *Bivens* action in which they claimed that their company had been illegally seized after a prosecutor filed an *in rem* civil action seeking forfeiture of the company's stock and other property pursuant to the civil forfeiture provisions of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. §§ 881(a)(6), (7). The Third Circuit held that the prosecutor was entitled to absolute immunity for his actions in filing and obtaining the forfeiture order. *Id.* at 1409–17. The court noted that "absolute immunity is extended to officials when their duties are functionally analogous to those of a prosecu-

tor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Id.* at 1411.

Plaintiffs' argument that *Schrob* is not applicable because *Schrob* involved a federal prosecutor rather than a state prosecutor as we have here lacks merit. Plaintiffs assert that the differing duties of a federal prosecutor compel a different result. Plaintiffs offer no authority for this assertion and we cannot find any support for it. As correctly pointed out by the defendants, both federal district attorneys and state county attorneys assume roles in criminal and civil actions involving their respective clients.

The recent decision by the Seventh Circuit in *Mendenhall v. Goldsmith,* 59 F.3d 685 (7th Cir.1995), provides additional support for the court's ruling in this case. In *Mendenhall,* the plaintiff brought a § 1983 action against a state prosecutor who initiated a forfeiture proceeding against plaintiff's real and personal property and seized that property after an *ex parte* proceeding. The Seventh Circuit, relying on *Schrob,* affirmed the district court's grant of absolute immunity to the prosecutor in filing the forfeiture action and in seizing the property subject to forfeiture. *Id.* at 691. In reaching that conclusion, the Seventh Circuit noted that "[f]or purposes of the immunity analysis, federal officials are indistinguishable from state officials and receive no greater degree of protection from constitutional claims." *Id.* at 690 n. 7. The court further rejected the argument of the plaintiffs in this case concerning the application of the doctrine of absolute immunity to actions taken in civil cases as follows:

> [T]hat the alleged misconduct here arise in the context of a civil proceeding with a law enforcement purpose does not render absolute immunity inappropriate. *Butz [v. Economou],* 438 U.S. [478] at 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 [ (1978) ]; *Schrob,* 948 F.2d at 1411–12; *Juide v. City of Ann Arbor,* 839 F.Supp. 497, 502 (E.D.Mich.1993). The essential inquiry is whether Goldsmith was functioning in an enforcement role analogous to that of a prosecutor. *Buckley [v. Fitzsimmons],* — U.S. —, —, 113 S.Ct. [2606] at 2615, 125 L.Ed.2d 209 [ (1993) ]; *Burns [v.*

*Reed],* 500 U.S. [478] at 490, 111 S.Ct. 1934, 1941, 114 L.Ed.2d 547 [ (1991) ]; *Butz,* 438 U.S. at 515, 98 S.Ct. at 2915; *Imbler [v. Pachtman],* 424 U.S. [409] at 431 n. 33, 96 S.Ct. 984, 996 n. 33, 47 L.Ed.2d 128 [ (1976) ]. If so, he was entitled to absolute immunity.

*Id.* at 691 (footnote omitted).

In accordance with the analysis and conclusion of the decisions in *Schrob* and *Mendenhall,* the court finds that defendant Barrett is entitled to absolute immunity for his actions in seeking forfeiture of the plaintiffs' property and in seizing that property without notice to the plaintiffs. In this conduct, defendant Barrett was acting pursuant to the authority vested in him under Kansas law, functioning purely in his capacity as an advocate for the state.

### B.

The defendants have also raised qualified immunity as a defense. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

When a defendant asserts the affirmative defense of qualified immunity, "the plaintiff initially bears a heavy two-part burden." *Albright v. Rodriquez,* 51 F.3d 1531, 1534 (10th Cir.1995). The plaintiff must show (1) "that the defendant's actions violated a constitutional or statutory right" and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue." *Id.* " 'Plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity.' " *Id.* (quoting *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995)). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Id.* at 1535. If the plaintiff succeeds, the burden shifts to the defendant to make the usual summary judg-

ment showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Cummins v. Campbell,* 44 F.3d 847, 850 (10th Cir.1994).

Plaintiffs have suggested that the defendants violated their Fourteenth Amendment due process rights in seizing their property without notice or a hearing. Plaintiffs do not develop this argument in any detail, nor do they provide any legal authority for it. Rather, plaintiffs focus primarily on the contention that the actions of the defendants violated K.S.A. 65–4135. Plaintiffs assert that the defendants seized their property knowing that the plaintiffs had not been convicted of a drug offense as required by K.S.A. 65–4135.

■ The arguments concerning the defendants' violation of state law are interesting but irrelevant here. To establish a claim under § 1983, plaintiffs must prove a violation of a right created by federal law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). A violation of state law is insufficient. *Jones v. City & County of Denver,* 854 F.2d 1206, 1209 (10th Cir.1988). Accordingly, the plaintiffs' assertion that the defendants violated Kansas law will not support a claim under § 1983.

■ The actions of the defendants in seizing the plaintiffs' real property without notice and an opportunity to be heard may well have violated the plaintiffs' Fourteenth Amendment due process rights. The Supreme Court has determined that the Fourteenth Amendment requires notice and a hearing prior to the seizure of real property under the drug forfeiture laws. *United States v. James Daniel Good Real Property,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). The Supreme Court and other courts, however, have reached a different conclusion on personal property such as automobiles and boats. Based upon the mobility of these items of property and the ease with which such items can be concealed with advance notification, the courts have determined that due process does not require preseizure notice and a hearing in forfeiture cases. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678–79, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974); *United States v. One 1980 Red Ferrari,* 875 F.2d 186, 189 (8th Cir.1989); *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1147 (9th Cir.1989). Accordingly, the court finds that the plaintiffs have failed to meet their burden in demonstrating a constitutional violation occurred concerning the seizure of their personal property. The defendants are therefore entitled to qualified immunity from this aspect of the plaintiffs' § 1983 claim.

■ In evaluating the plaintiffs' claim concerning the real property, the court must determine whether the due process rights violated by the defendants were clearly established at the time of the seizure in 1991. The law at that time was unsettled whether real property could be seized without notice and a hearing in a forfeiture proceeding. Compare *United States v. Property at 4492 S. Livonia Road,* 889 F.2d 1258 (2d Cir.1989) (due process requires a pre-seizure hearing) with *United States v. A Single Family Residence,* 803 F.2d 625 (11th Cir.1986) (due process does not require a pre-seizure hearing). The issue was not decided until the Supreme Court's decision in *James Daniel Good Real Property* in 1993. The defendants were not required to anticipate subsequent developments in the law and, therefore, are entitled to qualified immunity from this aspect of plaintiffs' § 1983 claim. *See Juide v. City of Ann Arbor,* 839 F.Supp. 497, 505–06 (E.D.Mich.1993).

### III.

With the grant of summary judgment to the defendants on plaintiffs' claims over which the court has original jurisdiction, the court shall decline to exercise supplemental jurisdiction over plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3).

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. # 67) be hereby granted. Judgment shall be entered for the defendants and against the plaintiffs on plaintiffs' claims brought under 42 U.S.C. § 1985 and 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that the court shall decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

IT IS SO ORDERED.